UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHEN MCNUTT, Administrator of the Estate of Ronald D. McNutt, Deceased,<br><br>  Plaintiff,<br><br> v.<br><br>R&S METALS LLC,<br><br>  Defendant/Crossclaim Defendant,<br><br>and<br><br>AECOM ENERGY & CONSTRUCTION, INC.; ALBERICI CONSTRUCTORS, INC. and WASHINGTON GROUP-ALBERICI JOINT VENTURE,<br><br>  Defendants/Crossclaim Plaintiffs/Third-Party Plaintiffs,<br><br> v.<br><br>JAMES R. LANGSTON TRUCKING and RIVER METALS RECYCLING, LLC,<br><br>  Third-Party Defendants. | Case No. 19-cv-300-JPG |

## MEMORANDUM AND ORDER

  This matter comes before the Court on a variety of motions to dismiss third-party claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Before getting to the substance of the motions, the Court reviews the genesis of this case.

**I. Background**

  This case arose from an accident that occurred in connection with hauling scrap metal from a construction project. There is no indication any party disagrees with the basic facts set forth here.

  Aecom Energy & Construction, Inc. ("Aecom") and Alberici Constructors, Inc. ("Alberici") combined for a joint venture, Washington Group-Alberici Joint Venture ("WGAJV"), to perform

construction work on the Olmsted Dam in Olmsted, Illinois. WGAJV farmed out the job of removing scrap metal from the worksite to R&S Metals LLC, doing business as Southern Metal Processing ("Southern Metal"), which then itself contracted with River Metals Recycling LLC ("River Metals") to haul the material away. In turn, River Metals hired James R. Langston Trucking ("Langston Trucking") to do the heavy lifting—actually moving the scrap metal from the dam worksite to the River Metals facility. The plaintiff's decedent, Ronald D. McNutt, was a Langston Trucking employee.

On March 19, 2018, McNutt transported a load of scrap metal pipes on a flatbed trailer from the dam worksite to the River Metals facility. While McNutt was unloading the scrap metal at River Metals, the pipes rolled off the trailer and crushed him. He did not survive.

McNutt's estate sued Aecom, Alberici, WGAJV, and Southern Metal in wrongful death and survival actions. In turn, Aecom, Alberici, and WGAJV (collectively, the "JV Defendants") brought third-party claims against Langston Trucking, Southern Metal,[1] and River Metals for contribution and implied indemnity. They also sued Southern Metal for breach of contract and express indemnity.

The motions to dismiss addressed in this order concern only the third-party claims:

- Southern Metal's motion to dismiss the third-party claims for breach of contract (Count VI), express indemnity (Count VII), and implied indemnity (Count VIII) (Doc. 46). The JV Defendants have responded to the motion (Doc. 56);

- River Metals's motion to dismiss the third-party claims for contribution (Count III) and implied indemnity (Count IV) (Doc. 51). The JV Defendants have responded to the motion (Doc. 55); and

- Langston Trucking's motion to dismiss the third-party claims for implied indemnity (Count II) (Doc. 57). The JV Defendants have responded to the motion (Doc. 64), and Langston Trucking has replied to that response (Doc. 71).

---

[1] The Court refers to the claims against Southern Metal as third-party claims, just as they were pled in the Third-Party Complaint (Doc. 19), but after McNutt's estate filed its First Amended Complaint (Doc. 60) joining Southern Metal as a defendant, the third-party claims technically became crossclaims between defendants.

The third-party defendants raise some common issues, which the Court will address first before turning to issues unique to Southern Metal.

## II. Analysis

All of the third-party defendants ask the Court to dismiss various claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted. When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

In *Bell Atlantic*, the Supreme Court rejected the more expansive interpretation of Rule 8(a)(2) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *Bell Atl.*, 550 U.S. at 561-63; *Concentra Health Servs.*, 496 F.3d at 777. Now "it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a

right to relief above the speculative level.'" *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading standard. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). A complaint still need not contain detailed factual allegations, *Bell Atl.*, 550 U.S. at 555, and it remains true that "[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain . . .' should stop and think: What rule of law *requires* a complaint to contain that allegation?" *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original). Nevertheless, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*, 550 U.S. at 555. If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject to dismissal. *Airborne Beepers*, 499 F.3d at 667.

A.  Failure to Plead Sufficient Facts

Southern Metal asks the Court to dismiss Count VI (breach of contract) and Count VII (express indemnity) of the JV Defendants' Third-Party Complaint and River Metals asks the Court to dismiss Count III (contribution) of the JV Defendants' Third-Party Complaint because the JV Defendants have not pled sufficient facts to support those causes of action.

1.  Count VI:  Breach of Contract

In Count VI, the JV Defendants assert that Southern Metal has breached its contract with WGAJV to pick up, transport, and dispose of scrap metal (Doc. 19-1). The Third-Party Complaint alleges that under the contract, Southern Metal was responsible for removing the scrap metal (3d-Pty. Compl. ¶ 11), for providing all the hauling equipment and tie downs used in the hauling process (3d-Pty. Compl. ¶ 12), and for inspecting the load for safety and security (3d-Pty. Compl. ¶ 18). It further alleges Southern Metal failed to inspect the load properly or to ensure it was unloaded safely (3d-Pty.

4

Compl. ¶ 45). In its articulation of Count VI, it quotes language from § 1.5(d)(4) of the contract that obligated Southern Metal to inform WGAJV if it had any safety concerns on the site and to ask for assistance.

Southern Metal argues that the JV Defendants failed to plead two specific elements of a breach of contract claim: (1) that WGAJV itself performed its obligations under the contract and (2) that Southern Metal breached any provision of the contract. *See Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001). In response, the JV Defendants argue that their pleading is replete with instances suggesting WGAJV's performance of the contract and that it plausibly suggests Southern Metal breached its duty to report any safety concerns stemming from its deficient inspection of the scrap metal load.

Southern Metal fails to recognize that even after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)), a plaintiff is not required to plead facts that correspond to the elements of its claim. *Stumm v. Wilkie*, No. 18-2978, 2019 WL 6487202, at *2 (7th Cir. Dec. 3, 2019); *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). All it needs to do is plead facts plausibly suggesting a right to relief above the speculative level. *Bell Atl.*, 550 U.S. at 555.

Notwithstanding this relaxed factual pleading standard, the Court finds WGAJV fails to plead facts plausibly suggesting a breach of contract. The contractual provision it points to is the agreement to report its safety concerns to WGAJV if it has any, but the facts pled do not suggest it had any safety concerns prior to the accident. The facts alleged simply do not plausibly suggest a right to relief for a breach of any contract to inform WGAJV of its safety concerns. For this reason, the Court will dismiss Count VI of the Third-Party Complaint without prejudice.

    2.    <u>Count VII: Express Indemnity</u>

In Count VII, the JV Defendants seek a declaration that Southern Metal is obligated to

indemnity WGAJV under the express indemnity clause in its contract with WGAJV (Doc. 19-1 at 8), which requires it to indemnify WGAJV against liability WGAJV incurs that was caused by Southern Metal or its subcontractors (3d-Pty. Compl. ¶¶ 55-56). Southern Metal argues that the JV Defendants fail to plead any facts suggesting it or its subcontractors were negligent.

The Court has reviewed the allegations in Count VII of the Third-Party Complaint and finds that they plausibly suggest a right to relief against Southern Metal for negligence in two areas related to the incident in issue: its or its subcontractors' inspections and unloading of the scrap metal that fell onto McNutt. Southern Metal has not pointed to any rule requiring more specific pleading. Furthermore, the allegations are sufficient to put Southern Metal on notice of what the JV Defendants claim it and its subcontractors did wrong, and any further details can be fleshed out in discovery. The Court will deny Southern Metal's motion to dismiss Count VII.

        3.      <u>Count III: Contribution</u>

In Count III, the JV Defendants seek contribution from River Metals for its role in McNutt's injury and death, namely, its failure to properly inspect and unload the scrap metal and to ensure McNutt was in a safe place before unloading the metal (3d-Pty. Compl. ¶¶ 38, 40). Like Southern Metal, River Metals argues that the JV Defendants have failed to plead facts suggesting it was negligent.

As with Count VII, the Court has reviewed the JV Defendants' allegations in Count III and finds that they plausibly suggest a right to relief against River Metals for negligence in its inspections and unloading of the scrap metal, and River Metals has not pointed to any rule requiring more specific pleading. And as with the indemnity claim against Southern Metal, the allegations in Count III are sufficient to put River Metals on notice of what the JV Defendants claim it did wrong, and any further details can be fleshed out in discovery. The Court therefore declines to dismiss Count III of the Third-Party Complaint.

B. Counts II, IV, and VIII: Implied Indemnity

Langston Trucking and River Metals ask the Court to dismiss the implied indemnity claims in Counts II and IV, respectively, on the grounds that there can be no implied indemnity without a pre-tort relationship between the putative indemnitee and indemnitor. Southern Metal asks the Court to dismiss the implied indemnity claim in Count VIII on the grounds that there can be no implied indemnity where an express indemnity agreement exists.

1. Pre-Tort Relationship

A cause of action for implied indemnity can arise where a principal, through no fault of its own, is liable for its agent's negligence against a third party. *BCS Ins. Co. v. Guy Carpenter & Co.*, 490 F.3d 597, 603 (7th Cir. 2007). "[T]o state a cause of action for indemnity, the third-party complaint must allege: (1) a pretort relationship between the third-party plaintiff and the third-party defendant, and (2) a qualitative distinction between the conduct of the third-party plaintiff and the third-party defendant." *Van Slambrouck v. Econ. Baler Co.*, 475 N.E.2d 867, 870 (Ill. 1985); *accord BCS Ins. Co.*, 490 F.3d at 603. The third-party plaintiff's liability "must be wholly derivative, resulting solely out of the agent's actions." *BCS Ins. Co.*, 490 F.3d at 603 (citing *Frazer v. A.F. Munsterman, Inc.,* 527 N.E.2d 1248, 1252 (Ill. 1988)). Classic examples of the necessary pre-tort relationship include lessor-lessee, employer-employee, owner-lessee, and master-servant relationships. *Van Slambrouck,* 475 N.E.2d at 870-71. It does not encompass the relationship between a contractor and a subcontractor with whom the contractor has no direct agreement or agency relationship even though the two are involved in a common undertaking. *Friedman, Alschuler & Sincere v. Arlington Structural Steel Co.*, 489 N.E.2d 308, 310 (Ill. App. Ct. 1985) (stating that "a pretort relationship requires a specified preexisting legal relationship beyond mere involvement in a common undertaking"); *compare Harrison v. Ill. Cent. R. Co.*, No. 08-cv-748-DRH, 2009 WL 3156701, at *4 (S.D. Ill. Sept. 28, 2009) (declining to dismiss implied indemnity claim for essentially derivative

7

liability under Federal Employers' Liability Act where complaint alleged "more than mere involvement in a common undertaking" but an "ongoing business relationship").

Langston and River Metals both claim that they had no pre-tort relationship with the JV Defendants. Indeed, the relationship, like that in *Friedman, Alschuler & Sincere*, was attenuated through a series of subcontracts. It amounted to no more than involvement in a common undertaking, not an ongoing business relationship, and it was certainly not the kind of relationship for which the JV Defendants could be held vicariously liable *because of* the relationship. On the contrary, the JV Defendants will be liable, if at all, for their own conduct. Accordingly, the JV Defendants can have no cause of action for implied indemnity against Langston or River Metals. The Court will therefore dismiss Counts II and IV of the Third-Party Complaint with prejudice. Contribution is their only avenue for recovery, and they are already following that path in Counts I and III.

2. Indemnity Clause

Southern Metal asks the Court to dismiss the JV Defendants' implied indemnity claim because they also have an express indemnity claim. Generally, under Illinois law, there can be no claim for implied indemnity where an express indemnity provision exists. *Fid. & Deposit Co. of Md. v. Edward E. Gillen Co.*, 926 F.3d 318, 326-27 (7th Cir. 2019) (citing *Quilico v. Union Oil Co.*, 374 N.E.2d 219, 226 (Ill. App. Ct. 1978)). "The existence of the indemnity agreement 'precludes inquiry into potential rights and liabilities under implied indemnity and a recovery by the indemnitee, if any, must stem from the contract.'" *Fid. & Deposit Co. of Md.*, 926 F.3d at 327 (quoting *Prater v. Luhr Bros., Inc.*, 366 N.E.2d 399, 404 (Ill. App. Ct. 1977)); *accord Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 432 N.E.2d 999, 1002 (Ill. App. Ct. 1982) ("The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests."). This is because where parties have agreed in an express contract "how and under what circumstances losses shall be allocated," it is assumed that they intended the contract

rather than other common law rules to govern their rights and liabilities. *Prater*, 366 N.E.2d at 404 (citing *Booth-Kelly Lumber Co. v. S. Pac. Co.*, 183 F.2d 902, 906-07 (9th Cir. 1950)); *see Carroll v. Acme-Cleveland Corp.*, 955 F.2d 1107, 1113 (7th Cir. 1992) (noting party's right to indemnity is "fixed by the Agreement, not by Illinois common law"). Indeed, "the mere existence of an indemnity agreement between two parties precludes recovery under the common law." *Installation Servs., Inc. v. Crown Castle Broad. USA Corp.*, No. 04 C 6906, 2006 WL 2024220, at *9 (N.D. Ill. July 13, 2006); *see, e.g., TreeHouse Foods, Inc. v. SunOpta Grains & Foods Inc.*, No. 18 C 1412, 2019 WL 1429337, at *13 (N.D. Ill. Mar. 29, 2019).

The JV Defendants concede that they cannot *recover* under both express and implied indemnity theories but argue that they should be allowed to proceed on both theories as alternative claims that they may pursue even if inconsistent with each other. *See McGinn v. Nw. Steel & Wire Co.*, 386 N.E.2d 71, 76 (Ill. App. Ct. 1978).

It is true that Federal Rule of Civil Procedure 8(d)(3) permits parties to plead as many claims as it has regardless of consistency. That rule, however, will not prevent dismissal where a party cannot state one of those claims under the facts it admits exist. Because the JV Defendants admit that there is an express indemnity provision in WGAJV's contract with Southern Metal (3d-Pty. Compl. ¶¶ 55 & 57) that applies to the indemnity question, Illinois law presumes that WGAJV and Southern Metal intended liability to be allocated according that that express agreement rather than any common law principle such as implied indemnity. This is true even where the express indemnity provision does not permit recovery. Had the JV Defendants advanced any plausible theory how the indemnification clause might not apply to the current liability dispute, the Court might find differently and allow the inconsistent theories to advance. However, the JV Defendants have made no such argument and have instead maintained the consistent position that the written indemnity agreement applies to the instant dispute. For this reason, the Court will dismiss Count VIII of the Third-Party Complaint but without

prejudice on the chance that the JV Defendants may be able to articulate why, despite the existence express indemnity agreement, it does not apply to this dispute.

C. Other Arguments

Southern Metal advances various other arguments why the JV Defendants' claims against it should be dismissed.

1. Similar Claims

Southern Metal asks the Court to dismiss the JV Defendants' express indemnity claim in Count VII on the grounds that the claim is functionally identical to their contribution claim in Count V. The JV Defendants argue that the causes of action are not functionally identical in that they differ in scope—the contribution claim applies only to Southern Metal's conduct, but the express indemnity claim applies to that conduct *and* Southern Metal's subcontractors' conduct—and in legal basis—the contribution claim is statutory, and the express indemnity claim is contractual. The Court finds that the causes of action, although both seeking recovery for the same injury, are sufficiently different that they are not redundant of each other and should not be stricken under Federal Rule of Civil Procedure 12(f).

2. Ripeness

Southern Metal contends the JV Defendants' express indemnity claim in Count VII is not yet ripe and should be dismissed because there has been no underlying finding of liability for which the JV Defendants could be indemnified. The JV Defendants acknowledge that a decision about express indemnity is not ripe until underlying liability is declared but argue that they have only asked for a decision on the issue should any underlying liability be found in this Court.

It is true that "decisions about indemnity should be postponed until the underlying liability has been established." *Lear Corp. v. Johnson Elec. Hldgs. Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). However, "[b]ecause ripeness is 'peculiarly a question of timing,' a court determines ripeness as of the date of its decision, not the date the lawsuit was filed." *Church of Our Lord & Savior Jesus Christ v.*

*City of Markham*, 913 F.3d 670, 677 (7th Cir. 2019) (quoting *Buckley v. Valeo*, 424 U.S. 1, 114-118 (1976)). Thus, there will be no problem with ripeness in this case so long as a decision on indemnity is not made until underlying liability is established.[2] Had the underlying liability issue been in another forum where there was no other live, non-speculative controversy before this Court, dismissal without prejudice might have been appropriate, *see Med. Assur. Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010) (quoting *Nationwide Ins. v. Zavalis,* 52 F.3d 689, 693 (7th Cir.1995), but that is not the situation here.

### 3. Duty to Defend

Southern Metal further asks the Court to dismiss any claim of the breach of the duty to defend that seeks damages prior to the time the JV Defendants filed the Third-Party Complaint. It argues that the JV Defendants did not allege Southern Metal had any earlier notice that the plaintiff was suing for McNutt's injury and death. In response, the JV Defendants explain that they have not asked for Southern Metal to defendant WGAJV in Count VII, so Southern Metal's request is moot.

## III. Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** Southern Metal's motion to dismiss Counts VI, VII, and VIII of the Third-Party Complaint (Doc. 46). The motion is granted as to Count VI (breach of contract) and Count VIII (implied indemnity), and those claims are **DISMISSED without prejudice**;

- **GRANTS in part** and **DENIES in part** River Metals's motion to dismiss Count III and Count IV of the Third-Party Complaint (Doc. 51). The motion is granted as to Count IV (implied indemnity), and that claim is **DISMISSED with prejudice**;

- **GRANTS** Langston Trucking's motion to dismiss Count II (implied indemnity) of the Third-

---

[2] There is an exception to this general rule: a court may find as a matter of law without running into ripeness problems that where the broader duty to defend does not exist, the narrower duty to indemnify cannot exist either. *See, e.g., World Water Works Hldgs., Inc. v. Cont'l Cas. Co.*, 392 F. Supp. 3d 923, 933 (N.D. Ill. 2019) (Where a court determines that there is no duty to defend. . . , it may also declare that there is no duty to indemnify without running into a ripeness problem.").

11

Party Complaint (Doc. 57), and that claim is **DISMISSED with prejudice**; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED: January 14, 2020**

                                                    s/ J. Phil Gilbert
                                                  **J. PHIL GILBERT**
                                                  **DISTRICT JUDGE**